JAMES E. ELDRIDGE, Indiv. and as Adm'r of the Estate of Anna Eldridge, Plaintiff-Appellant, v. ELI LILLY & COMPANY *et al.*, Defendants (Brown Drug Company, Defendant-Appellee).

Fourth District   No. 4—85—0328

Opinion filed November 5, 1985.

Costello, Long, Young & Dvorak, of Springfield, for appellant.

Scholz, Staff & Palmer, of Quincy (James L. Palmer, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:
The plaintiff, James Eldridge, brought this action for the wrongful death of Anna Eldridge. The plaintiff's complaint alleged the death resulted from an overdose of drugs, including one commonly known as Darvon. The plaintiff sued Thomas Westerhoff, the physician who prescribed the drugs, Eli Lilly & Company, the manufacturer

of the drug, and Brown Drug Company, which filled the prescriptions. The plaintiff alleged Brown Drug Company had been negligent in filling prescriptions for quantities of Darvon and other drugs beyond those normally prescribed and in failing to warn Dr. Westerhoff that the prescriptions were for an excessive quantity. The plaintiff appeals from the trial court's order granting Brown Drug Company's motion to dismiss. At issue is whether a pharmacist is under a duty to warn a physician that drugs are being prescribed in excessive quantities.

■ A pharmacist owes a duty of ordinary care in practicing his profession, but such care requires the highest degree of prudence, thoughtfulness and diligence, and it is proportioned to the danger involved. (*Jones v. Walgreen Co.* (1932), 265 Ill. App. 308.) In *Jones*, a pharmacist had difficulty understanding a prescription and filled it with a dangerous drug not indicated by the prescription. The court held that when it is doubtful as to what drug is intended, a pharmacist has a duty to take all reasonable precautions to avoid filling the prescription with the wrong drug. In the present case, the plaintiff does not allege that Brown Drug Company did anything other than fill the prescription as ordered by the physician.

No Illinois court has addressed the question of whether a pharmacist has a duty to warn a physician that drugs are being prescribed in an excessive amount. In *Jones v. Irvin* (S.D. Ill. 1985), 602 F. Supp. 399, however, the court decided Illinois law imposed no duty on a pharmacist to warn the customer or notify the physician that drugs are being prescribed in dangerous amounts, that the customer is being overmedicated or that various drugs in their prescribed quantities could have an adverse effect. The court reasoned:

> "It is the duty of the prescribing physician to know the characteristics of the drug he is prescribing, to know how much of the drug he can give his patient, to elicit from the patient what other drugs the patient is taking, to properly prescribe various combinations of drugs, to warn the patient of any dangers associated with taking the drug, to monitor the patient's dependence on the drug, and to tell the patient when and how to take the drug. Further, it is the duty of the patient to notify the physician of the other drugs the patient is taking. Finally, it is the duty of the drug manufacturer to notify the physician of any adverse effects or other precautions that must be taken in administering the drug. [Citation.] Placing these duties to warn on the pharmacist would only serve to compel the pharmacist to second guess every prescription a doctor orders in an attempt to escape liability." (602 F. Supp. 399, 402.)

The court also noted the overwhelming majority of cases from other jurisdictions stood for the proposition that a pharmacist has no duty to warn. See, *e.g., Pysz v. Henry's Drug Store* (Fla. App. 1984), 457 So. 2d 561; *Batiste v. American Home Products Corp.* (1977), 32 N.C. App. 1, 231 S.E.2d 269; *People's Service Drug Stores, Inc. v. Somerville* (1932), 161 Md. 662, 158 A. 12.

We find that *Irvin* decision to be sound. The drug manufacturer is under a duty to warn the doctor of any dangerous propensities of the drug. The doctor acts as a learned intermediary on behalf of the ultimate consumer. (*Mahr v. G.D. Searle & Co.* (1979), 72 Ill. App. 3d 540, 390 N.E.2d 1214.) The physician must evaluate the patient's needs, assess the risks and benefits of available drugs, prescribe one and supervise its use. (*Lindsay v. Ortho Pharmaceutical Corp.* (2d Cir. 1980), 637 F.2d 87.) The plaintiff maintains many pharmacists may have greater knowledge of the propensities of drugs than physicians. He contends a pharmacist should, therefore, be under a duty to act as a safety supervisor and determine whether the physician has properly prescribed the drugs. The propriety of a prescription depends not only on the propensities of the drug but also on the patient's condition. A prescription which is excessive for one patient may be entirely reasonable for the treatment of another. To fulfill the duty which the plaintiff urges us to impose would require the pharmacist to learn the customer's condition and monitor his drug usage. To accomplish this, the pharmacist would have to interject himself into the doctor-patient relationship and practice medicine without a license.

The plaintiff contends his complaint sufficiently alleges the breach of a statutory duty. He notes the practice of pharmacy is regulated as a profession affecting the public health, safety and welfare. (Ill. Rev. Stat. 1983, ch. 111, par. 4001.) Plaintiff points to section 10 of the Pharmacy Practice Act, which provides, in pertinent part:

"Any person who sells or dispenses any drug, medicine or poison shall sell or dispense such drug, medicine or poison in good faith. 'Good faith,' for purposes of this Section, has the meaning ascribed to it in subsection (v) of Section 102 of this 'Illinois Controlled Substances Act,' approved August 16, 1971, as amended." (Ill. Rev. Stat. 1983, ch. 111, par. 4031.)

The "good faith" provision of the Illinois Controlled Substances Act states:

" 'Good Faith' means the prescribing or dispensing of a controlled substance by a practitioner in the regular course of professional treatment to or for any person who is under his treat-

ment for a pathology or condition other than that individual's physical or psychological dependence upon or addiction to a controlled substance, except as provided herein: and application of the term to a pharmacist shall mean the dispensing of a controlled substance pursuant to the prescriber's order which in the professional judgment of the pharmacist is lawful. The pharmacist shall be guided by the accepted professional standards including, but not limited to the following, in making that judgment:

(1) Lack of consistency of doctor-patient relationship,

(2) Frequency of prescriptions for same drug by one prescriber for large number of patients,

(3) quantities beyond those normally prescribed,

(4) unusual dosages,

(5) unusual geographic distances between patient, pharmacist and prescriber,

(6) consistent prescribing of habit-forming drugs." (Ill. Rev. Stat. 1983, ch. 56½, par. 1102(v).)

The plaintiff asserts these statutes place a duty on the pharmacist to warn the physician when drugs are being prescribed in quantities beyond those normally prescribed.

In order to recover for a violation of a statute, the plaintiff must show that the violation proximately caused his injury and that the statute was intended to protect a class to which he belongs from the kind of injury he suffered. (*Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 384 N.E.2d 323.) Initially, we note the Illinois Controlled Substances Act was designed to prevent the unlawful use of controlled substances rather than to prevent overdoses from lawful prescriptions. (Ill. Rev. Stat. 1983, ch. 56½, par. 1100.) The statute makes no mention of any duty on the pharmacist to warn the physician that a prescription is for an excessive quantity. Nor does the statute prohibit a pharmacist from filling lawful orders for quantities beyond those normally prescribed. It simply requires the pharmacist to make a good faith determination that a prescription is lawful, that it was ordered "by a practitioner in the regular course of professional treatment to or for any person who is under his treatment for a pathology or condition other than that individual's physical or psychological dependence upon or addiction to a controlled substance ***." Whether a prescription is for a quantity beyond that normally prescribed is simply a factor which the pharmacist must consider in determining whether the prescription is lawful. The statute imposes no duty on the pharmacist in filling prescriptions for legitimate treat-

ment, even if the prescription is for a quantity of drugs which might be dangerous.

The plaintiff cites *Talman v. Department of Registration & Education* (1979), 78 Ill. App. 3d 450, 397 N.E.2d 151. In *Talman*, the State Board of Pharmacy revoked a pharmacist's license for having inventory shortages of controlled substances, for failing to keep records required by statute, and for violating the good faith standard set out in the Illinois Controlled Substances Act. The good faith violation was based on evidence that the pharmacist had dispensed 194 bottles of a controlled substance to a single family in an eight-month period. On review, the court assumed the State Board of Pharmacy possessed the necessary knowledge and expertise to determine when such excessive sales demonstrated a lack of good faith. The Board must have concluded that amount of the drug could not have been prescribed for legitimate treatment. In the present case, the plaintiff's complaint reveals that drugs were prescribed for legitimate treatment.

The plaintiff contends the legislature included the good faith requirement in section 10 of the Pharmacy Practice Act to serve some purpose other than the one achieved by the Illinois Controlled Substances Act. We agree but find the additional purpose is not to have the pharmacist interfere in the doctor-patient relationship. Public Act 82—162 inserted the good faith provision into section 10. (1981 Ill. Laws 1029, 1035.) By the same legislation, the good faith provision was incorporated into section 2d of the Medical Practice Act (Ill. Rev. Stat. 1983, ch. 111, par. 4408), section 6.2 of the Dental Practice Act (Ill. Rev. Stat. 1983, ch. 111, par. 2221.2), section 2—c of "An Act to regulate the practice of podiatry in the State of Illinois" (Ill. Rev. Stat. 1983, ch. 111, par. 4909), and section 3.1 of the Veterinary Medicine and Surgery Practice Act (Ill. Rev. Stat. 1983, ch. 111, par. 6903.1). It is evident that the legislature was not concerned with making pharmacists perform a safety check on physician's prescriptions. Public Act 82—162 was part of the Prescription Drug Abuse Task Force's recommendations to the Dangerous Drug Commission. (Senate Debates, 82nd Gen. Assem., Legislative Day 28, April 29, 1981, at 28.) The legislation ensures that not only can a practitioner's license to dispense or prescribe controlled substances be revoked or suspended for a violation of the good faith requirement but in addition, his license to practice his profession can be revoked or suspended. While pharmacies are required to register under the Illinois Controlled Substances Act, individual pharmacists are not. (Ill. Rev. Stat. 1983, ch. 56½, par. 1302(c)(5).) Thus, the inclusion of the good faith requirement in section 10 makes certain that a pharmacist can lose

his license to practice his profession for violating that requirement. Section 10 was not designed to protect against the kind of injury which the plaintiff claims he suffered. We, therefore, hold a pharmacist has no common law or statutory duty to refuse to fill a prescription simply because it is for a quantity beyond that normally prescribed or to warn the patient's physician of that fact.

For these reasons, the order of the trial court dismissing the plaintiff's complaint is affirmed.

Affirmed.

GREEN, P.J., and MORTHLAND, J., concur.