CORINA FRYE, as Special Adm'r of the Estate of Stephen Frye, Deceased, Plaintiff-Appellant, v. MEDICARE-GLASER CORPORATION *et al.*, Defendants-Appellees.

Fifth District   No. 5—90—0559

Opinion filed October 8, 1991.—Rehearing denied October 30, 1991.

Paul Thomas Austin, of Marion, for appellant.

W.A. Armstrong, of Mitchell & Armstrong, Ltd., of Marion, for appellees Medicare-Glaser Corporation and Evelyn Nightengale.

No brief filed for appellee John Barrow.

JUSTICE CHAPMAN delivered the opinion of the court:
Corina Frye, as special administrator of the estate of Stephen Frye, deceased, filed a two-count complaint against Dr. John Barrow, M.D., for medical malpractice, alleging that the doctor failed to warn plaintiff's decedent of the dangerous effects of taking the drug Fiorinal and drinking alcoholic liquor. In count II of the complaint plaintiff sued Medicare-Glaser Corporation (Medicare-Glaser), the pharmacy that filled the prescription, and Evelyn Nightengale, the registered pharmacist and employee of Medicare-Glaser, on a theory

of negligent undertaking. Plaintiff alleged that, although defendants had no duty to warn of the dangerous side effects of the drug in the first instance, they undertook to warn, did so negligently, and caused the death of Stephen Frye.

Defendants Medicare-Glaser and Evelyn Nightengale filed a motion for summary judgment and contended that neither the pharmacy nor the pharmacist had any duty to warn of the dangerous side effects of drugs. The trial court granted defendants' motion for summary judgment, and plaintiff appeals.

Plaintiff's decedent, Stephen Frye, had arthroscopic surgery on his knee performed by Dr. John Barrow, who prescribed the drug Fiorinal following the surgery. Evelyn Nightengale filled the prescription. Dr. Barrow did not include any direction or instruction in the prescription to place any label on the capsule container or to give any warning that alcohol should not be consumed when taking the drug. When Nightengale's deposition was taken she testified that in preparing the label for the prescription, patient information is typed into the Medicare-Glaser computer, and the label is printed out. In this case Nightengale filled the prescription and labeled the container using the label generated by the computer, identifying the prescriber of the medication, the patient, and the dosage as indicated by the physician in his prescription.

Nightengale testified that in addition to printing the label, the computer is programed to print a separate document that lists warnings that might be applied to the patient's container of medication. When asked what standard warnings will be suggested by the software when the drug Fiorinal is typed in, Nightengale answered, "drowsiness *** alcohol and *** impairing ability to drive." Nightengale explained that these warnings may be given as three separate cautionary labels, or may be combined into one. In the instant case, Nightengale attached two labels to the back of the container of medication. On the first label appeared a logo of a sleepy eye with the words, "May Cause DROWSINESS." The second label read, "CAUTION: Federal Law prohibits the transfer of this drug to persons other than the patient to whom it was prescribed."

Nightengale testified that the label which warned about the effects of alcohol when used in combination with the drug Fiorinal said "something to the effect that alcohol may intensify the effect of this drug." The decision whether or not to place any of the suggested warnings on the container is left to the discretion of the pharmacist filling the prescription. Nightengale testified that she did not use the

warning label warning about the effects of alcohol use because she believed people might be offended to think that she believed they drank.

Plaintiff claims that Stephen Frye died as a result of consuming Fiorinal and alcohol. Our task is not to determine if Frye in fact died as a result of the combined use of Fiorinal and alcohol. For the purpose of determining whether the court erred in granting summary judgment, we must only decide whether a pharmacist can be held liable for injuries or death to the consumer if she undertakes to warn the consumer of the dangerous side effects of a prescription drug and does so negligently.

Where the material facts are undisputed and the sole question presented is the application of law to those facts, summary judgment is a proper way to dispose of a case. Similarly, if controlling law establishes that the complaint fails to state a cause of action under Illinois law, summary judgment would be proper. (*Vesey v. Chicago Housing Authority* (1990), 205 Ill. App. 3d 962, 966-67, 563 N.E.2d 916, 920.) Based on the record in this case we find that the trial court erred in entering summary judgment in favor of the defendants.

Defendants contend that they cannot be held liable to the plaintiff because the law imposes no duty upon a pharmacy or its agents to warn customers of the dangers of taking prescription drugs in combination with other drugs or to warn of the dangerous side effects of prescription drugs. In support of their position defendants cite *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387, *Eldridge v. Eli Lilly & Co.* (1985), 138 Ill. App. 3d 124, 485 N.E.2d 551, and *Leesley v. West* (1988), 165 Ill. App. 3d 135, 518 N.E.2d 758.

In *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387, the supreme court applied the "learned intermediary" doctrine:

> "The rule *** provides that manufacturers of prescription drugs have a duty to warn prescribing physicians of the drugs' known dangerous propensities, and the physicians, in turn, using their medical judgment, have a duty to convey the warnings to their patients." (*Kirk*, 117 Ill. 2d at 517-18, 513 N.E.2d at 392.)

*Kirk* was a passenger injured in an automobile accident, which plaintiff claimed was caused by his driver McCarthy's incapacitation due to the ingestion of certain prescribed medications and an alcoholic beverage. Plaintiff sued the physicians who prescribed the drugs and the hospital which supplied them and claimed that they negligently failed to warn the driver of the drugs' dangerous side effects. Plaintiff's

complaint against the hospital sounded in both strict liability and negligence.

Under the strict liability counts, the plaintiff alleged that the products—the prescription drugs—were made unreasonably dangerous through the hospital's alleged failure to warn the patient, McCarthy, of their possible adverse effects. The trial court dismissed the strict liability counts stating that there was no duty to Kirk under strict liability principles because there was no duty to the nonpatient, nonuser of the product. (*Kirk*, 117 Ill. 2d at 522, 513 N.E.2d at 394.) The trial court's dismissal of the strict liability counts was affirmed on appeal.

The supreme court also affirmed the trial court's dismissal of plaintiff's negligence count against the hospital. Plaintiff alleged that Michael Reese Hospital had a duty, in prescribing the drugs, to adequately warn McCarthy of adverse effects the drugs might have on his ability to safely operate an automobile. The supreme court held that "public policy and social requirements do not require that a duty be placed upon the hospital to warn the patient of the dangers of using the drug, prescribed by [her] physician, that would be extended to third-party nonpatients who have no patient-hospital relationship or a special relationship with a patient." *Kirk*, 117 Ill. 2d at 527, 513 N.E.2d at 397.

Cited with approval in *Kirk* is *Eldridge v. Eli Lilly & Co.* (1985), 138 Ill. App. 3d 124, 485 N.E.2d 551, a wrongful death action in which it was alleged that the decedent died as a result of a drug overdose. The *Eldridge* court affirmed the dismissal of plaintiff's complaint against the pharmacist, holding that a pharmacist has no common law or statutory duty to refuse to fill a prescription simply because it is for a quantity beyond that normally prescribed or to warn the patient's physician of that fact. (138 Ill. App. 3d at 130, 485 N.E.2d at 554-55.) In rendering its decision the court reasoned:

> "The propriety of a prescription depends not only on the propensities of the drug but also on the patient's condition. A prescription which is excessive for one patient may be entirely reasonable for the treatment of another. To fulfill the duty which the plaintiff urges us to impose would require the pharmacist to learn the customer's condition and monitor his drug usage. To accomplish this, the pharmacist would have to interject himself into the doctor-patient relationship and practice medicine without a license." 138 Ill. App. 3d at 127, 485 N.E.2d at 553.

*Leesley* cited *Kirk* and *Eldridge* and also applied the learned intermediary doctrine. In *Leesley* the plaintiff sued for damages resulting from severe gastrointestinal bleeding caused by a prescription

drug. The pharmacist who supplied the drug received the pills it distributed to the plaintiff in a bulk container to which the drug manufacturer had glued a "package insert" describing the drug's chemical properties and potential hazards. The pharmacist did not convey any of that information to the plaintiff, nor was it instructed to do so by the plaintiff's physician. The court found in favor of the defendant-pharmacist and declined to subject pharmacists to liability for failing to give warnings which the physician had not requested. *Leesley*, 165 Ill. App. 3d at 143, 518 N.E.2d at 775.

We recognize that under the learned intermediary doctrine the defendants in this case were under no initial duty to provide warnings regarding Fiorinal to Stephen Frye. However, the plaintiff in this case has framed her claim on the theory that the defendants negligently performed the *voluntary undertaking* of properly warning Stephen Frye of the dangers of Fiorinal. That theory, espoused in section 323 of the Restatement (Second) of Torts (1965), has been applied in Illinois in various contexts. (*Greene v. City of Chicago* (1976), 48 Ill. App. 3d 502, 363 N.E.2d 378, *aff'd* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205.) Section 323 provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts §323 (1965).

In *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596, our supreme court held that liability may attach where a landlord voluntarily undertakes to provide security measures, but performs the undertaking negligently. The court held that the Chicago Housing Authority (CHA) engaged in a voluntary undertaking when it contracted with a security agency to provide protective services for tenants and social guests. *Pippin* relied on the earlier decision of *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769 (insurer held responsible in tort for personal injuries suffered as a result of the insurer's negligent performance of a voluntary inspection of the premises where the injuries occurred), which based its holding on the principle stated in section 323(1) of the first Restatement. Section 323(1) of the first Restatement provides:

"One who gratuitously renders services to another \*\*\* is subject to liability for bodily harm caused to the other by his failure, while so doing, to exercise \*\*\* such competence and skill as he possesses." Restatement of Torts §323(1) (1934).

Although *Pippin* and *Nelson* based their decisions on section 323 of the first Restatement, the principles espoused in those opinions are applicable here in our application of section 323 of the second Restatement.

The plaintiff does not contend that the warning actually given was inaccurate; one of the side effects of Fiorinal is that it causes drowsiness. Assume for a moment, however, that a pharmacist gave a completely inaccurate warning, *i.e.*, "Alcohol in moderate amounts may augment the effectiveness of Fiorinal," and that a consumer combined alcohol and Fiorinal with disastrous results. Should the learned intermediary doctrine protect the pharmacist under these circumstances? We think not. A consumer with no warning from a pharmacist must consult his physician to obtain additional information. A consumer who receives a warning from his pharmacist is entitled to rely upon the accuracy and the completeness of that warning.

Like the defendants in cases discussed earlier, the defendants herein had no initial duty to protect the plaintiff but voluntarily assumed a duty by placing a warning on the drug. In this case defendants, having undertaken to warn, assumed the duty to do so in a reasonable manner. Plaintiff has alleged that the warning given was not appropriate under the circumstances. Defendants can, therefore, be liable for injuries or death to the consumer if they undertook to warn the consumer of the dangerous side effects of a prescription drug and did so negligently. Therefore, the trial court erred in entering summary judgment in favor of the defendants.

This cause is reversed and remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

HARRISON and GOLDENHERSH, JJ., concur.