(No. 72908.—

CORINA FRYE, Special Adm'r of the Estate of Stephen
Frye, Deceased, Appellee, v. MEDICARE-GLASER
CORPORATION *et al.*, Appellants.

*Opinion filed October 22, 1992.*

BILANDIC, J., joined by FREEMAN, J., dissenting.

W.A. Armstrong, of Mitchell & Armstrong, Ltd., of Marion, for appellants.

Paul Thomas Austin, of Marion, for appellee.

Nicholas J. Lynn and Michael L. Elowe, of Holleb & Coff, of Chicago, for *amicus curiae* Illinois Pharmacists Association.

Robert H. Hanaford, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

John F. Atkinson and Dale J. Atkinson, of Atkinson & Atkinson, of Evanston, for *amicus curiae* National Association of Boards of Pharmacy.

JUSTICE CLARK delivered the opinion of the court:

On August 26, 1988, Corina Frye, as special administrator of the estate of Stephen Frye, deceased, filed a two-count complaint against defendants Dr. John Barrow, M.D., Medicare-Glaser Corporation (Medicare-Glaser) and Evelyn Nightengale. In count I, plaintiff alleged that Dr. Barrow failed to warn plaintiff's decedent of the dangerous effects of taking the drug Fiorinal while drinking alcohol. In count II, plaintiff sued Medicare-Gla-

ser, the pharmacy that filled the prescription, and Evelyn Nightengale, the registered pharmacist and employee of Medicare-Glaser, on a theory of negligent undertaking. Specifically, plaintiff alleged that although Medicare-Glaser and Evelyn Nightengale had no initial duty to warn of the dangerous side effects of the drug Fiorinal, they undertook to warn and did so negligently. The circuit court granted Medicare-Glaser and Evelyn Nightengale's motion for summary judgment as to count II.

The appellate court reversed, holding that the circuit court erred in granting summary judgment in favor of Medicare-Glaser and Evelyn Nightengale. (219 Ill. App. 3d 931.) We granted Medicare-Glaser and Evelyn Nightengale's petition for leave to appeal (134 Ill. 2d R. 315). Only count II of plaintiff's complaint is before this court for review. *Amicus curiae* briefs were filed by the Illinois Trial Lawyers Association ("A Pharmacist should be under a duty to properly warn under special circumstances such as when she voluntarily assumes the duty to warn"), the Illinois Pharmacists Association ("Impose upon the pharmacy profession the same duty as that owed by other professionals practicing their professions") and the National Association of Boards of Pharmacy ("A pharmacist has an affirmative duty to warn a patient of potential drug interactions and possible side effects of drugs").

On Friday, August 28, 1986, Dr. Barrow performed arthroscopic surgery on Stephen Frye's knee at Franklin Hospital in Benton, Illinois. Following surgery, Dr. Barrow prescribed the drug Fiorinal for Stephen Frye. Later that afternoon, after Frye had been released from the hospital, his mother had the prescription filled at the Medicare-Glaser pharmacy by Evelyn Nightengale, the pharmacist on duty. Nightengale filled the prescription with the correct drug and with the appropriate number

of capsules. Further, on the prescription container, Nightengale affixed two labels: one, a label with a picture of a "drowsy eye" and the words "May Cause Drowsiness"; and, two, a federally required label stating "CAUTION: Federal law prohibits the transfer of this drug to persons other than the patient to whom it was prescribed." The written prescription from Dr. Barrow for Fiorinal did not instruct or suggest that any warning label be placed on the prescription container.

On September 3, 1986, Stephen Frye was found dead in his trailer, and his date of death was estimated to be the evening of September 1.

Evelyn Nightengale was deposed by plaintiff's counsel on July 7, 1989, and provided the following relevant information. When a prescription is filled at Medicare-Glaser, patient information and the specific prescription is typed into a computer. The computer generates a label, identifying the prescribing physician, the patient, and the dosage as indicated by the physician's prescription. In addition, a computer software program generates a separate document that suggests warning labels that might be placed on the container. In this case, the computer suggested three warning labels: "drowsiness *** alcohol and *** impairing the ability to drive." Nightengale testified that the warning pertaining to the use of alcohol and Fiorinal said "something to the effect that alcohol may intensify the effect of this drug." Nightengale also stated that the pharmacist filling a prescription has the discretion of whether to place a specific label on a container. Here, Nightengale stated that she did not place a label warning about the effects of alcohol when combined with Fiorinal because "it offended so many people that I would think that they might drink." Nightengale testified that she had been "chewed out" in the past for placing such labels on containers.

As mentioned briefly above, two *amici curiae*, namely, the Illinois Pharmacists Association (Pharmacists Association) and the National Association of Boards of Pharmacy (National Association), argue that this court should place an affirmative duty on pharmacists to counsel consumers on the dangerous side effects of prescription drugs. Specifically, the Pharmacists Association and the National Association contend that the "learned intermediary doctrine," which basically states that drug manufacturers must warn physicians of a drug's dangerous side effects and that the prescribing physicians have a duty to convey the warnings to their patients (see *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507; *Leesley v. West* (1988), 165 Ill. App. 3d 135; *Eldridge v. Eli Lilly & Co.* (1985), 138 Ill. App. 3d 124), should not stand in the way of a pharmacist's affirmative duty to warn consumers of a drug's dangerous side effects. This question will not, however, be considered here, as the parties have never raised the issue. (See *Archer Daniels Midland Co. v. Industrial Comm'n* (1990), 138 Ill. 2d 107, 117.) Plaintiff has conceded in her complaint and throughout the appeals process that pharmacists do not have an affirmative duty to counsel customers on the dangerous side effects of prescription drugs. Rather, plaintiff bases her complaint on the negligent undertaking theory of liability, and that is, therefore, the focus of this opinion.

Plaintiff argues that although Medicare-Glaser and Nightengale did not have a duty to warn Stephen Frye of the dangerous side effects of Fiorinal, they undertook to warn of the dangerous side effects, and in so doing were negligent. Specifically, plaintiff alleges that defendants failed to adequately warn of the dangerous side effects of Fiorinal and "placed a warning label showing a 'drowsy eye' *** when the proper warning label should have warned that anyone taking [Fiorinal] should avoid

the use of alcohol, because alcohol would intensify the effect of [Fiorinal]."

This matter is before us on defendants' motion for summary judgment. The purpose of summary judgment is not to try an issue of fact but to determine if one exists. A motion for summary judgment should be granted when the pleadings, depositions and affidavits reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) Moreover, for purposes of summary judgment, we must take the facts in the light most favorable to the non-moving party, and thus we assume that Stephen Frye died from the combined use of alcohol and Fiorinal as plaintiff alleges.

The appellate court stated that pursuant to the "learned intermediary doctrine," Medicare-Glaser and Evelyn Nightengale were under no initial duty to warn Frye of the dangerous side effects of Fiorinal. (219 Ill. App. 3d at 934-35 (citing *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, *Leesley v. West* (1988), 165 Ill. App. 3d 135, and *Eldridge v. Eli Lilly & Co.* (1985), 138 Ill. App. 3d 124).) Moreover, the appellate court correctly noted that plaintiff has framed her claim under the voluntary undertaking theory of liability. However, the appellate court stopped short in its analysis by failing to address whether a genuine issue of material fact exists as to whether the defendants performed their undertaking negligently. The appellate court merely held that "[d]efendants can, therefore, be liable for injuries or death to the consumer if they undertook to warn the consumer of the dangerous side effects of a prescription drug and did so negligently." 219 Ill. App. 3d at 936.

After reviewing the pleadings and depositions on file, we do not believe that a genuine issue of material fact

exists as to whether Medicare-Glaser and Evelyn Nightengale performed their voluntary undertaking negligently. Pursuant to the voluntary undertaking theory of liability, one who gratuitously or for consideration renders services to another is subject to liability for bodily harm caused to the other by one's failure to exercise due care or " 'such competence and skill as [one] possesses.' " (*Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 317, quoting *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69.) In *Nelson*, this court stated:

> "It is axiomatic that every person owes to all others a duty to exercise ordinary care to guard against injury which naturally flows as a reasonably probable and foreseeable consequence of his act, and that such duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." *Nelson*, 31 Ill. 2d at 86.

In addition to the above, of particular relevance is section 323 of the Restatement (Second) of Torts, which states:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts §323 (1965).

Under the voluntary undertaking theory of liability, the duty of care to be imposed upon a defendant is limited to the extent of its undertaking. (See *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 210 ("The [Chicago Housing] Authority's duty was limited by the

extent of the undertaking, *viz*, to use reasonable care in engaging Interstate [Service Corporation] to provide the guard services. The Authority can therefore be liable at most for the negligent hiring of Interstate").) In this case, plaintiff believes that the extent of the defendants' undertaking was to warn Frye of all potential dangers involved in taking Fiorinal. We believe that, in so arguing, plaintiff has taken an overly broad interpretation of the defendants' undertaking. The extent of the defendants' undertaking was the placing of the "drowsy eye" label on Frye's prescription container which warned that Fiorinal may cause drowsiness. Our narrow construction of defendants' voluntary undertaking is supported by public policy. First, if we were to hold that by choosing to place the "drowsy eye" label on Frye's prescription container defendants were assuming the duty to warn Frye of all of Fiorinal's side effects, we believe that pharmacists would refrain from placing any warning labels on containers. Thus, consumers would be deprived of any warnings which might be beneficial.

Moreover, requiring Nightengale to warn Frye of all potential side effects of Fiorinal because she chose to warn him of the drug's propensity to cause drowsiness would be difficult from a practical standpoint. The dangerous propensities of Fiorinal include more than the three standard warnings Medicare-Glaser's computer software program suggested to Nightengale. These additional warnings include: hypersensitivity to aspirin, caffeine or barbiturates; patients with porphyria; drug dependence; the effects of use with other central nervous system depressants; adverse effects during pregnancy; excess dosage; dizziness and lightheadedness; and gastrointestinal disturbances such as nausea, vomiting and flatulence.

The "drowsy eye" label placed on Frye's container was correct—one of Fiorinal's side effects is that it does

cause drowsiness. Assuming, as the appellate court did, that Nightengale gave a completely inaccurate warning, and the consumer followed the incorrect instructions resulting in injury, defendants would be liable for performing their voluntary undertaking negligently. However, that is not the case here.

Plaintiff does not deny that the warning actually given was accurate. Rather, plaintiff argues that the "drowsy eye" label was not adequate to warn of the "real" dangers, *i.e.*, drinking alcohol while taking Fiorinal, and that the "drowsy eye" label could mislead someone into thinking that the worst side effect of Fiorinal was drowsiness. We disagree. As explained above, Medicare-Glaser by and through its agent Nightengale undertook to warn Frye that Fiorinal may cause drowsiness. That was the extent of their undertaking, which they were obligated to perform with reasonable care. Plaintiff's contention that the "drowsy eye" label was inadequate to warn of the danger of drinking alcohol and taking Fiorinal begs the question. Defendants did not intend that the "drowsy eye" label act as a warning of the danger of combining alcohol and Fiorinal.

Further, we think that it is unreasonable to argue that by placing only the "drowsy eye" label on the prescription container, a pharmacist might mislead a consumer into believing that drowsiness is the only side effect of Fiorinal. In our opinion, consumers should principally look to their prescribing physician to convey the appropriate warnings regarding drugs, and it is the prescribing physician's duty to convey these warnings to patients. (See *Kirk*, 117 Ill. 2d at 524 ("The extent of warnings to patients concerning prescription drugs, as we have previously noted, is within the discretion of the physician").) Further, in terms of this case, there is no evidence that Frye's death was due to his reliance on the defendants' decision to place the "drowsy eye" label on

the prescription container. See Restatement (Second) of Torts §323(b) (1965).

For the foregoing reasons, we hold that the trial court was correct in granting summary judgment. The judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE BILANDIC, dissenting:

I concur in the majority's determination that the prescribing physician has the primary duty to warn of the side effects of prescription drugs. As the majority correctly points out, count I of the plaintiff's complaint against the doctor is not before this court. I also agree with the majority that the question of whether pharmacists have an affirmative duty to warn customers of the side effects of prescription drugs is not before us in this case.

The issue is whether the defendants negligently performed their voluntary undertaking and thereby caused Frye to suffer harm that was reasonably probable and foreseeable. I must respectfully dissent because the majority improperly restricts the scope of the voluntary undertaking theory of liability.

In *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 86, this court stated:

> "It is axiomatic that every person owes to all others a duty to exercise ordinary care to guard against injury which naturally flows as a reasonably probable and foreseeable consequence of his act, and that such duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons."

The duty to exercise ordinary care is a broad duty. In regard to the liability which may be incurred due to a

breach of this duty, the Restatement (Second) of Torts states:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts §323 (1965).

Under this theory of liability, one who voluntarily undertakes a course of action may not perform the act negligently. One who is negligent in his or her undertaking will be held liable for foreseeable consequences of the act if another suffers harm because, *inter alia*, he or she relied upon the other's undertaking. The majority is correct in noting that, under this theory of liability, the defendant's duty of care is limited to the extent of his or her undertaking. However, by asserting that the extent of the defendants' undertaking in this case was merely "the placing of the 'drowsy eye' label on Frye's prescription container which warned that Fiorinal may cause drowsiness" (153 Ill. 2d at 33), the majority has improperly restricted the duty of the instant defendants by improperly restricting the scope of their particular undertaking.

This court has previously rejected such a narrow construction of a defendant's voluntary undertaking. (See *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313.) In *Cross*, the Chicago Housing Authority (CHA) hired Wells Fargo Alarm Services, Inc., a security service, to provide guard services in one of its housing projects during the hours of 9 a.m. to 1 a.m. The plaintiff in

*Cross* was severely beaten in the building at 1:15 a.m. after the guards had left the premises. In his complaint against the CHA, the plaintiff alleged that the effect of the CHA's voluntary undertaking to provide part-time security service was to substantially increase the incidence of crime in the project after 1 a.m., thereby increasing the personal danger to the tenants and guests therein. In *Cross*, the CHA cited *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, and argued that the extent of its undertaking was to hire the security service and, therefore, it could only be liable if it was negligent in hiring the Wells Fargo service. This court rejected the CHA's argument, stating:

> "But *Pippin* is not to be so narrowly read. *Pippin* held that the CHA's voluntary undertaking to hire a protection agency required it to use reasonable care in hiring. The setting here is different, but the ground asserted for liability of the CHA is the same. A duty voluntarily assumed must be performed with due care or 'such competence and skill as [one] possesses.' [Citation.] The CHA undertook to provide part-time guard service at the project. In providing that service it was obligated to use reasonable care not to create increased dangers to persons lawfully on its property." (*Cross*, 82 Ill. 2d at 317.)

The *Cross* court found that the plaintiff stated a cause of action against the CHA. *Cross*, 82 Ill. 2d at 317-18.

In *Cross*, this court made it clear that the extent of the CHA's voluntary undertaking was not merely hiring the security agency. Rather, the *Cross* court determined that the extent of the CHA's undertaking was to provide part-time security service. Under *Cross*, the majority in the case *sub judice* errs in determining that the extent of the defendants' undertaking was merely to warn Frye of drowsiness. The majority's construction of the defendants' undertaking is much too narrow and significantly undermines the voluntary undertaking theory of liability.

The *Cross* court found that the extent of the CHA's undertaking was to provide part-time guard service and not merely the hiring of the service. Therefore, in the instant case, I would conclude that the extent of the defendants' undertaking was to warn Frye of the dangerous side effects of Fiorinal, not merely to warn Frye of drowsiness. In the case at bar, the full extent of the defendants' undertaking is clear from the record. The pharmacist gave testimony that she had other computer-generated warning labels as well as the "drowsy eye" label but she selectively chose not to include other labels on Frye's prescription container.

Although the majority refers to *Cross*, it does not correctly apply the reasoning of that case. The majority reasons, in the case at bar, that the duty of the pharmacist ended with the placing of the drowsiness label on the medicine because she applied that label correctly. It overlooks the fact that the pharmacist also knew that drinking alcohol, while taking the medicine, could be fatal. The majority concludes that by not placing the alcohol label on the medicine, the pharmacist did not assume the risk of any harm that may visit a patient who indulges.

This reasoning is in direct conflict with the opinion of this court in *Cross*. The CHA provided private security guards until 1 a.m. This is analogous to the pharmacist placing the "drowsy eye" label on the medicine. When the security guards left at 1 a.m., the housing complex was more dangerous. The plaintiff in that case sustained injuries at 1:15 a.m., when the area was not protected. This court in *Cross* held the CHA to a different standard than the majority holds the defendants in this case. By doing so, the majority has *reversed Cross sub silencio*.

In my judgment, the placing of the "drowsy eye" label may have warned Frye of a relatively minor consequence of the medication. Failure to place a warning

about the use of alcoholic beverages while taking the medication has far greater consequences. Yet, the pharmacist testified that she was aware of the consequences but did not place the alcohol label because it offended some people. According to the pleading, mixing of alcohol with Fiorinal was fatal to Frye.

Having undertaken to warn Frye of the dangerous side effects of Fiorinal, the defendants were obligated to do so in a reasonable manner. By placing only the "drowsy eye" label on Frye's prescription container, a reasonable person could be misled into thinking that drowsiness is the only or the most severe side effect of Fiorinal. Summary judgment in this case is improper because material issues of fact exist with respect to whether the defendants' undertaking increased the risk of harm to Frye (see Restatement (Second) of Torts §323(a) (1965)) or whether Frye died because he relied upon the defendants' undertaking to warn of the dangerous side effects of the drug (see Restatement (Second) of Torts §323(b) (1965)). Because material questions of fact exist with respect to whether the defendants negligently performed their undertaking to warn Frye of the dangerous side effects of Fiorinal, the grant of summary judgment in favor of the defendants should be reversed and the cause should be remanded for resolution of these fact questions by the trier of fact.

For these reasons, I respectfully dissent.

JUSTICE FREEMAN joins in this dissent.