GEORGE GRIMM, Plaintiff-Appellee, v. MARK L. ARNOLD *et al.*, Defendants-Appellants.

Fifth District    No. 5—92—0230

Opinion filed December 14, 1993.

LEWIS, P.J., specially concurring.
CHAPMAN, J., dissenting.

William F. Sherwood, of Thomas, Mottaz, Eastman & Sherwood, of Alton, for appellants.

John W. Halloran, of Callis Law Firm, P.C., of Granite City, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Defendants, Mark L. Arnold and Barbara A. Arnold, appeal from a verdict and judgment against them and in favor of plaintiff, George Grimm, following a bench trial held in the circuit court of Madison County on February 25, 1992. Plaintiff's complaint against defendants alleged that defendants were the owners of certain property, a residence; that they had allowed a railroad tie bordering the driveway to protrude onto the public sidewalk in front of the house; and that plaintiff had tripped and fallen over the railroad tie while walking on the public sidewalk, suffering injuries.

The evidence at trial revealed that, although defendants did own the property in question, they had leased it to a tenant, who had complete control over the premises. Prior to leasing the property, defendants had placed railroad ties along and bordering the driveway in or-

der to keep the gravel inside the driveway boundaries. While the defendants resided in the premises, they discovered no problem with the railroad ties moving or becoming displaced.

After the premises were leased, defendant Barbara Arnold walked by the premises every day. On two or three occasions per week Barbara would notice that one of the railroad ties would protrude perpendicularly onto the sidewalk, sometimes up to 8 to 12 inches. On each such occasion, Barbara would replace the railroad tie in its original position so that it did not protrude onto the sidewalk. She realized that the railroad tie created a hazard when it protruded onto the sidewalk. Barbara would place the tie behind one of the concrete blocks which lined the sidewalk. Defendants did not consider any further action to secure or remove the railroad ties, nor did they speak with their tenant about the situation.

Plaintiff lived next door to the leased premises. While walking along the sidewalk late one evening, he tripped over the railroad tie which was protruding onto the sidewalk, falling to the ground and suffering injuries.

Immediately following closing arguments, the trial court made an oral ruling on the issue of liability, reserving its ruling on the question of damages. The trial court held that, although defendants were under no legal duty to perform any repairs on the leased premises, once they undertook repairs, they were under a legal duty to perform them with ordinary care. The court further found that defendant Barbara Arnold's act of replacing the railroad tie when she found it protruding onto the sidewalk constituted a repair and that this repair was not performed with ordinary care because defendants knew the action was ineffective to secure the tie and to prevent it from again slipping onto the sidewalk. The court found that defendants had a duty not only to replace the railroad tie in its original location but to take action to insure that it did not again protrude onto the sidewalk. The court found that defendants' failure to prevent what was acknowledged to be a dangerous condition from recurring constituted negligence which was a proximate cause of plaintiff's injuries.

On March 2, 1992, the trial court entered judgment on the case, finding that plaintiff was contributorily negligent to the extent of 20% and awarding plaintiff damages in the amount of $84,000. Defendants appeal the finding of liability.

■■ The trial court correctly found that, absent a covenant to repair in a lease agreement or the landlord's knowledge of latent defects on the premises, the landlord has no duty to repair premises demised to a tenant and he is not liable in negligence for his failure to

do so. (*Seago v. Roy* (1981), 97 Ill. App. 3d 6, 8, 424 N.E.2d 640, 641.) However, as the trial court also correctly held, a landlord who voluntarily undertakes to make repairs upon the leased premises is under a duty to use ordinary care in carrying out the work even though he is not under a legal obligation to make the repairs. (*Brewer v. Bankord* (1979), 69 Ill. App. 3d 196, 198, 387 N.E.2d 344, 345.) As the trial court correctly held, when a landlord gratuitously makes repairs and fails to exercise reasonable care in doing so, he is generally liable for resulting injury. (*Brewer*, 69 Ill. App. 3d at 198, 387 N.E.2d at 345.) We find, however, that the trial court erred as a matter of law in failing to recognize in the instant case that while a duty voluntarily undertaken must be performed with due care, the scope of the duty is limited by the extent of the undertaking. *Poelker v. Macon Community Unit School District No. 5* (1990), 212 Ill. App. 3d 312, 315, 571 N.E.2d 479, 480.

■ In the instant case, the defendants never undertook to "repair" the railroad tie in such a way that it would never again protrude onto the sidewalk. Defendant Barbara Arnold merely replaced the tie in its original location whenever she found it protruding onto the sidewalk. There is no evidence that she performed this undertaking negligently, despite the fact that the tie continued to be displaced onto the sidewalk. Defendants never discovered the reason the railroad tie kept being displaced onto the sidewalk. Although defendant Barbara Arnold speculated as to several possible causes for displacement of the railroad tie, including neighborhood children playing with or around the tie or the tenant's car or the tenant's boyfriend's 18-wheeler rolling over or into the tie, she was never able to confirm any cause. Consequently, defendants never undertook to control whatever the cause might be, nor did they undertake to "repair" the railroad tie in such a way that it could not be again displaced onto the sidewalk. Because the scope of defendants' duty to exercise reasonable care is limited by the extent of defendants' undertaking, that is, replacing the railroad tie in its original position, defendants had no further duty to remove or secure the railroad tie so that it could not move onto the sidewalk.

We find this case to be similar to *Frye v. Medicare-Glaser Corp.* (1992), 153 Ill. 2d 26, 605 N.E.2d 557, in which our supreme court held that a pharmacy was not negligent in failing to warn of the dangers of consuming alcohol while taking a medication, although it did voluntarily undertake to warn of the risk of drowsiness while taking the medication. In that case, plaintiff argued that the extent of the defendants' undertaking was to warn of all potential dangers involved

in taking the medication. The supreme court found this to be an overly broad interpretation of the defendants' undertaking, which extended only to warning of the danger of drowsiness. The supreme court pointed out:

"Our narrow construction of defendants' voluntary undertaking is supported by public policy. First, if we were to hold that by choosing to place the 'drowsy eye' label on Frye's prescription container defendants were assuming the duty to warn Frye of all of Fiorinal's side effects, we believe that pharmacists would refrain from placing any warning labels on containers. Thus, consumers would be deprived of any warnings which might be beneficial." 153 Ill. 2d at 33, 605 N.E.2d at 560.

Similarly, in the instant case, were we to hold that by simply replacing the railroad tie in its original position defendants were assuming the duty to insure that the tie could not move back onto the sidewalk, defendants and others would be discouraged from performing the beneficial task of removing a potentially hazardous obstruction from a public sidewalk.

In *Frye*, plaintiff argued that the "drowsy eye" label was inadequate to warn of the "real" danger of drinking alcohol while taking the medication. The supreme court found that this contention begged the question because defendants did not intend that the "drowsy eye" label act as a warning of the danger of combining alcohol and the medication. The defendants undertook only to warn plaintiff that the medication may cause drowsiness. That was the extent of defendants' undertaking, which they were obligated to perform with reasonable care.

Similarly, in the instant case, defendants never undertook to remove or secure the railroad tie so that it could not be moved back onto the sidewalk. They undertook only to replace it in its original location when they found it displaced. This they were obligated to perform with reasonable care, which we find they did.

We note in the instant case that the railroad tie posed no danger and constituted no defect while in its original and proper position alongside the driveway, and defendants' actions of replacing the tie in its original location did not create a dangerous condition or increase the risk of harm to plaintiff, nor did it conceal a dangerous or defective condition which caused plaintiff's injuries. We think this distinguishes the instant case from *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472, in which it was found that the Chicago Housing Authority's voluntary undertaking of providing guard service from 9 a.m. until 1 a.m. actually increased the risk of

harm to tenants after 1 a.m. Therefore, the housing authority could not argue that protection of its tenants after 1 a.m. exceeded the scope of its voluntary undertaking and that it had no duty to exercise reasonable care for the protection of its tenants between the hours of 1 a.m. and 9 a.m.

Because we find that the trial court erred as a matter of law in finding that defendants' duty extended beyond the scope of their voluntary undertaking, and because we further find that defendants did not act negligently in replacing the railroad tie in its original position alongside the driveway, we reverse the judgment of the trial court against defendants and in favor of plaintiff and hereby enter judgment for defendants.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed, and judgment is hereby entered in favor of defendants.

Reversed; judgment entered.

PRESIDING JUSTICE LEWIS, specially concurring:

This is a tough and tricky case that could have far-reaching implications, if we had decided in the favor of the plaintiff. Naturally, I feel sympathy for Mr. Grimm, who apparently was injured because someone was negligent. After all, we have all heard the adage that "accidents just don't happen, they are caused." The initial question then is who caused the accident?

Plaintiff's counsel admitted in oral argument that the only logical inference or conclusion that could be reached was that some human force caused this "quite large" railroad tie to move. (The trial judge took judicial notice that railroad ties are "quite large.") The fact that the tie moved onto the public sidewalk two or three times a week rules out natural causes. Moreover, we see trains with hundreds of tons of cargo roll over two rails loosely connected to railroad ties that are not attached to the ground without the ties moving out of place. There is no other reasonable inference to be reached except that someone negligently or intentionally was moving the particular railroad tie in this case onto the sidewalk.

Who then moved the railroad tie onto the sidewalk proximately causing plaintiff's injury? It certainly was not proven that it was the defendants. Who was responsible for preventing the railroad tie from moving onto the sidewalk? The tenant may have been responsible because she controlled and had possession of the land. The tenant in possession, not the landlord, is liable for injuries sustained by third

parties on the premises. *Buente v. Van Voorst* (1991), 213 Ill. App. 3d 116, 571 N.E.2d 513.

The dissent in this case points to another cause, the tenant's boyfriend, who performed miracles, by somehow, and with regularity, parking an 18-wheeler in a small, single-lane, sloping residential driveway possessed by the tenant. The boyfriend was not on trial, but these facts offer an explanation of how a railroad tie could move. The boyfriend, assuming that his truck was the moving cause, was obviously negligent in even attempting to park an 18-wheeler in the driveway.

Justice Welch's opinion mentioned other parties that may have been at fault for plaintiff's injuries. The plaintiff, however, wants to shift the blame to third parties for reasons that may not be difficult to fathom. We should not allow the blame to be shifted to the defendants merely because they had legal title to the property, but that was what was done in this case. In fact, the evidence was that it was Barbara Arnold, one of the landlords, who pushed the tie back into place on all occasions. There was no evidence that Mark Arnold, Barbara's husband, ever did anything other than to have an ownership interest in the property, yet he was found to be a proximate cause of the accident and had a judgment entered against him.

Barbara Arnold did not cause the accident by any overt act. She merely shoved the tie back into place and even put a concrete block against it so as to prevent a lesser force than a collision with the wheels of an 18-wheeler from moving the tie. The act of pushing the tie off of the sidewalk cannot be said to be negligent. Her and her husband's negligence, according to the plaintiff and the trial court, was in not ensuring that the tie would stay in place regardless of outside forces or causes. We cannot even call this outside force an intervening cause because that would assume that the shoving of the tie back into place was a negligent act. The outside force, thus, was the proximate cause of the accident, because the accident would never have occurred without the intentional or negligent act of another person.

It should be emphasized that the accident did *not* occur on the leased property. The accident occurred on a public sidewalk. No one even suggests that a landlord has a duty to keep public sidewalks adjacent to the leased property free of debris. Yet, we are asked to rule that the landlord has such a duty, if the landlord attempts to clean the sidewalk two or three times. Would the landlord become responsible to prevent the public from tripping over the tenant's children's toys

that were continuously left lying on the sidewalk, if the landlord regularly picked up the toys and put them into the yard?

Plaintiff cites no cases that give the landlord, absent an agreement in the lease, the right to enter upon the property leased and to make repairs. The tenant has the right to the possession of the property without interference by the landlord with her right to quiet enjoyment. (*D.J. Bielzoff Products Co. v. James B. Beam Distilling Co.* (1954), 3 Ill. App. 2d 530, 123 N.E.2d 135.) If the front porch or the garage were falling down, could the landlord take it upon herself to repair them without the permission of the tenant?

The plaintiff, the trial judge, and the dissent in this case all assume that the landlord has the absolute right to enter upon the land of a tenant, in the absence of an agreement, and remove part of the property leased. No authority is cited for that proposition. When you think about it, it looks and smells like trespass and theft. See *D.J. Bielzoff Products Co. v. James B. Beam Distilling Co.* (1954), 3 Ill. App. 2d 530, 123 N.E.2d 135 (where the landlord's permission to the defendant to paint a sign on the exterior walls of a building in which the lessee rented the sixth and seventh floors was a violation of the lessee's right to possession).

I realize that we are talking about one railroad tie, but such a ruling could have major implications for landlords and tenants. For instance, what if the property that was knocked upon the sidewalk was a cornerpost of a fence? If the landlord fixed the fencepost several times and the tenant's boyfriend continued to back an 18-wheeler into it, should the landlord then be under a duty to remove the fence? The tenant may rightfully become upset when the fence that she leased to keep the children in, and burglars and nosey neighbors out, is suddenly removed by the landlord. What if the TV antenna blows over every time that a storm occurs, does the landlord have a duty, after pushing the antenna back into the yard several times, to haul the tower off?

The supreme court raised the major problem with holding the landlord liable in *Frye v. Medicare-Glaser Corp.* (1992), 153 Ill. 2d 26, 605 N.E.2d 557. If you hold the landlord liable for attempting to make repairs, the landlord associations will soon notify landlords that they are opening themselves up to liability, if they attempt a repair. Furthermore, any kind of communication to the tenant by the landlord asking him to do something about the perceived dangerous condition may be enough to open the door to liability. We would be discouraging landlords from even warning tenants that there may be a dangerous condition on their leasehold.

The dissent cites *Harnischfeger Corp. v. Gleason Crane Rentals, Inc.* (1991), 223 Ill. App. 3d 444, 585 N.E.2d 166, a products liability case, for the proposition that the balancing of the likelihood of danger versus the cost of securing and/or removing the tie should be weighted in favor of a duty to secure or remove the tie. This argument assumes that the defendants had the right to secure or remove the tie. Even though the cost of removal may not have been great, there must first be a duty to repair and a right to repair or remove the property. In *Harnischfeger*, defendant had a duty and the right to attach to a crane warning decals provided by the manufacturer before selling the crane to another party. (*Harnischfeger Corp. v. Gleason Crane Rentals, Inc.* (1991), 223 Ill. App. 3d 444, 585 N.E.2d 166.) In the case at bar, there was no duty or right to repair or remove the tie.

One final matter, the dissent cites and uses section 379 of the Restatement (Second) of Torts (1965) to justify the finding of liability. This issue, however, was not raised by the parties. Further, a careful reading of section 379 indicates that the lessor is liable, as if he remained in possession of the land, if there is a condition which the lessor realizes or should realize will involve an unreasonable risk of harm to others outside the land. If the lessor in this case had remained in possession of the land, the railroad tie would have never moved upon the sidewalk! Barbara Arnold would not have tried to park an 18-wheeler in a small residential driveway. Moreover, there is nothing in the record that indicates that the defendants should have foreseen at the time of leasing the premises that the tenant, Sharon Steel, would date a truck driver, who would regularly park an 18-wheeler in the small driveway and knock the bordering railroad tie onto the sidewalk.

Accordingly, I have to concur with Justice Welch's opinion.

PRESIDING JUSTICE CHAPMAN, dissenting:

I dissent.

The area of my disagreement with the majority opinion lies neither in its recitation of the relevant facts nor in its review of the applicable law. My disagreement focuses on the following paragraph from pages 4 and 5 of the slip opinion:

"In the instant case, the defendants never undertook to 'repair' the railroad tie in such a way that it would never again protrude onto the sidewalk. Defendant Barbara Arnold merely replaced the tie in its original location whenever she found it protruding onto the sidewalk. There is no evidence that she

performed this undertaking negligently, despite the fact that the tie continued to be displaced onto the sidewalk. Defendants never discovered the reason the railroad tie kept being displaced onto the sidewalk. Although defendant Barbara Arnold speculated as to several possible causes for displacement of the railroad tie, including neighborhood children playing with or around the tie or the tenant's car or the tenant's boyfriend's 18-wheeler rolling over or into the tie, she was never able to confirm any cause. Consequently, defendants never undertook to control whatever the cause might be, nor did they undertake to 'repair' the railroad tie in such a way that it could not be again displaced onto the sidewalk. Because the scope of defendants' duty to exercise reasonable care is limited by the extent of defendants' undertaking, that is, replacing the railroad tie in its original position, defendants had no further duty to remove or secure the railroad tie so that it could not move onto the sidewalk." 253 Ill. App. 3d at 407.

Assuming that the scope of the duty is limited by the extent of the undertaking, the relevant inquiry should be: What was undertaken by the defendant? The majority concludes that "replacing the railroad tie in its original position" was the extent of the undertaking. Not only do I disagree with that conclusion, but I submit that even the defendants would disagree with that conclusion.

The tie was originally placed alongside the driveway to contain the gravel. When the tie extended onto the sidewalk and created a hazard, the defendant placed it back in its original position, not to contain the gravel in the driveway (although that would also occur), but to eliminate the hazard. The defendant's undertaking and the extent of it could not be more clear from Mrs. Arnold's own testimony:

"Q. And the reason you would move it off the sidewalk is because you knew that someone could potentially get hurt, am I correct?

A. Someone could. I was worried about no certain person getting hurt.

Q. And as a result of that you had to move the tie off the sidewalk back onto the yard two to three times a week?

A. That would be a good estimate, yes."

As this excerpt reveals, even under the majority's statement of the issue, the defendant undertook to move the tie to prevent injury.

The majority goes on to say:

"There is no evidence that she performed this undertaking negligently, despite the fact that the tie continued to be displaced onto the sidewalk." (253 Ill. App. 3d at 407.)

I cannot agree with that conclusion either. In fact, it was the repetitive nature of the tie's encroachment and the defendant's repairs upon the sidewalk that led the trial court to impose liability.

Assuming that the tie was properly installed originally, it fairly quickly became apparent that something was causing it to move onto the public sidewalk. While the owner would generally have no duty to rectify this admittedly dangerous condition, as the majority correctly points out, once the duty to remedy the situation was undertaken, the owner was required to perform in a reasonably safe manner. Simply placing the tie upon the ground without securing it may have been reasonable the first time, the second and third times, and perhaps even the fourth and fifth times; but when the tie continued to extend onto the sidewalk two to three times a week over the course of the summer, it had to become obvious that some further repair was needed. Whether that additional step would have been to secure it with spikes or, as the trial judge suggested, to remove it altogether is not particularly important. Either act would have made the situation safer, and the latter suggestion, the removal, would have remedied it completely. Balancing the likelihood of injury from a railroad tie blocking a sidewalk against the cost and/or effort of properly securing it or removing it, and considering the other elements of the duty equation (see *Harnischfeger Corp. v. Gleason Crane Rentals, Inc.* (1991), 223 Ill. App. 3d 444, 585 N.E.2d 166), I do not find the trial court's imposition of a duty unwarranted.

In addition, although the majority states:

"[d]efendants never discovered the reason the railroad tie kept being moved onto the sidewalk" (253 Ill. App. 3d at 407),

this statement is not completely supported by the record, and more importantly, it suggests an alternative theory of recovery. From defendant's testimony it could be inferred the tenant's car or the tenant's boyfriend's 18-wheeler may have nudged the tie onto the sidewalk. If this inference is correct, then the original placement of an unsecured tie next to a driveway on a sloping lot next to a public sidewalk may have created a dangerous condition before defendant transferred possession. Section 379 of the Restatement (Second) of Torts provides:

"§379. Dangerous Conditions Existing When Lessor Transfers Possession.

A lessor of land who transfers its possession in a condition which he realizes or should realize will involve unreasonable risk of physical harm to others outside of the land, is subject to the same liability for physical harm subsequently caused to them by the condition as though he had remained in possession." (Restatement (Second) of Torts §379, at 281 (1965).)

The Restatement offers two illustrations of the principle stated in section 379:

"Illustrations:

1. A leases to B a building on which, as A knows or as a reasonably careful inspection would disclose, the rainspouts are in such bad condition that they discharge quantities of water upon the sidewalk of a highway upon which the building abuts. Six months after B has taken possession the water discharged from the rainspouts upon the highway freezes and forms ice ridges upon which C, a traveler on the highway, slips and falls, sustaining serious harm. A is subject to liability to C, irrespective of whether B has or has not covenanted to keep the building in good repair.

2. A leases to B a dwelling house. On the premises there is a back gate opening into an alley, seldom used and not necessary to ingress or egress. The gate is in such a condition that it is dangerous only when opened. Some time after B has taken possession he opens the gate. While he is doing so it falls upon C, a pedestrian passing along the public alley. A is subject to liability to C.

*g.* The liability stated in this Section cannot be avoided by a clause in the lease exonerating the lessor from responsibility for the condition of the land. Although such a clause may be effective as to any rights of the lessee (see §496B), it has no effect upon the liability to third persons outside of the land who are not parties to the contract or in privity with it." Restatement (Second) of Torts §379, at 282-83 (1965).

Under either the theory of negligent repair relied upon by the trial court or the theory of the creation of a dangerous condition by the lessor before transfer that is suggested by section 379 of the Restatement, I would affirm the trial court.

Therefore, I respectfully dissent.