2015 IL App (1st) 142990

FIRST DIVISION
DECEMBER 28, 2015

No. 1-14-2990

| | | |
|---|---|---|
| ANTHONY HERNANDEZ, Individually and as Special | ) | Appeal from the |
| Administrator of the Estate of Gilbert C. Hernandez, | ) | Circuit Court of |
| Deceased, | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 11 L 3179 |
| WALGREEN COMPANY, and ADSI DELAWARE, | ) | |
| LLC d/b/a OSCO DRUG, | ) | |
| Defendants-Appellees | ) | |
| | ) | |
| (Rebecca C. Preston, M.D. and Preston Health Partners, | ) | Honorable |
| P.C., | ) | John H. Ehrlich, |
| Defendants). | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Liu and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff-appellant Anthony Hernandez, individually and as special administrator of
the Estate of Gilbert C. Hernandez, deceased, appeals from the trial court's order granting
summary judgment to the defendants-appellees Walgreen Company (Walgreen) and ADSI
Delaware, LLC d/b/a Osco Drug (Osco) dismissing the plaintiff's claims based upon the lack of a
recognized duty owed by the defendant pharmacies.  For the following reasons, we affirm the
judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3     From May 2006 until his death in March 2010, the plaintiff's decedent, Gilbert C. Hernandez (the decedent), was treated by Rebecca C. Preston, M.D. (Dr. Preston) for chronic back pain.  From at least as early as August 2008 to February 2010, Dr. Preston issued the decedent a number of prescriptions for methadone, which the decedent filled at pharmacies operated by Walgreen and Osco.  On March 5, 2010, the decedent died, allegedly from methadone intoxication.

¶ 4     On March 24, 2011, the plaintiff commenced this action by filing a complaint against Dr. Preston and Preston Health Partners, P.C., who are not parties to this appeal.   The original complaint alleged that Dr. Preston had committed medical malpractice in prescribing methadone to the decedent despite knowing of his "propensity to overuse methadone" and that she failed to adequately monitor his use of prescription methadone.  The plaintiff's claims against Dr. Preston and Preston Health Partners, P.C. are not at issue in this appeal.

¶ 5     On June 13, 2011, the plaintiff filed an amended complaint naming as additional defendants Walgreen Co. and American Drug Stores a/k/a Osco Drug.  The amended complaint contained wrongful death counts against Walgreen and Osco alleging they had breached their duty of care by dispensing methadone prescriptions to the decedent "in quantities and time frames that were not appropriate."  The complaint alleged that the pharmacies were negligent in filling prescriptions "in excess quantities and for a time frame shorter than recommended on dosage prescribed for refills"; failing to "evaluate and control the dispensation of medication *** in a manner to prevent an increased risk of injury and death from methadone intoxication"; and filling prescriptions for the decedent "when [they] knew or should have known the dispensing of said medication *** would cause injury."  The plaintiff alleged that the decedent's death resulted

from "consum[ing] prescription medication carelessly and negligently dispensed and sold to him by" Walgreen and Osco. On October 14, 2011, the plaintiff filed a second amended complaint, whose caption changed the name of the Osco defendant from "American Drug Stores a/k/a Osco Drug" to "Supervalu Pharmacies Inc., aka Osco Drug." The substance of the allegations against Walgreen and Osco were otherwise unchanged in the second amended complaint.

¶ 6    Walgreen and Osco filed answers to the second amended complaint in which they admitted that the decedent had "presented certain prescriptions for methadone prescribed by Dr. Preston" but denied any negligence. The parties subsequently engaged in discovery, including production of the decedent's medical records as well as the depositions of Dr. Preston and pharmacists from Walgreen and Osco.

¶ 7    On September 10, 2013, Osco filed a motion for summary judgment pursuant to section 2-1005 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1005 (West 2012)). In that motion, Osco acknowledged that the decedent had filled methadone prescriptions at Osco but argued that no negligence claim could be maintained against it due to the lack of any legally recognized duty. Osco argued that under Illinois law, a "pharmacist has no duty to warn a customer/physician or to refuse to fill a prescription due to the excessive quantities of the medication." Osco also argued that no duty could be imposed on it to warn the decedent about the risk of overdose, in light of the learned intermediary doctrine, under which "the doctor functions as a learned intermediary between the drug manufacturer and the patient and uses his medical judgment in deciding what information and warnings he or she will provide the patient." Osco further argued that no breach of any duty could be found since the evidence showed that the prescriptions filled at Osco were actually authorized by Dr. Preston, and there was no

evidence that Osco pharmacists "gave the wrong amount" or otherwise failed to fill the prescriptions as requested by Dr. Preston.

¶ 8    On November 20, 2013, Walgreen also filed a motion for summary judgment. Similar to Osco's motion, Walgreen argued it had no duty to refuse to fill any of the methadone prescriptions that had been lawfully prescribed by Dr. Preston, or to monitor a customer's prescription history to determine whether the prescription is for the proper dosage. Walgreen argued that imposing any such duty "would directly interfere with the patient–physician relationship" and that it could not "second-guess" the prescribing physician. Walgreen argued that if it were under a duty "to question why Dr. Preston prescribed methadone at the dosage, amount or the frequency" prescribed, it would "interject itself directly into the patient-physician relationship and practice medicine by overseeing and altering Dr. Preston's chosen course of therapy." Further, Walgreen argued that because it had filled the decedent's prescriptions "as written and intended by Dr. Preston," there was no evidence that it had breached any duty.

¶ 9    On April 11, 2014, the plaintiff filed his response to Osco and Walgreen's summary judgment motions. The plaintiff's response did not cite any case law holding that a pharmacist has a duty to monitor a patient's dosage history or to warn of excessive prescription drug use. Instead, the plaintiff's response relied largely on the supporting affidavit of its expert witness, Robert L. Barkin, a doctor of pharmacy, who opined that Walgreen and Osco breached a duty of "good faith dispensing" in failing to "know, assess, and monitor the frequency of [the decedent's] methadone prescriptions" and in failing to contact Dr. Preston about the "excessive dispensing" of methadone.

¶ 10    The plaintiff urged that such a duty to monitor was supported by the provisions of the Illinois Controlled Substances Act that establish a "prescription monitoring program," under

which pharmacies are required to report prescription information and may inquire into a patient's prescription history.  See 720 ILCS 570/316, 318 (West 2012).  The plaintiff urged that although the decedent's prescription history was "readily accessible" to Walgreen and Osco, they had breached their duty by failing to "adequately evaluate [decedent's] prescription history before dispensing methadone to him."

¶ 11    The plaintiff contended that the pharmacies were negligent in failing to recognize that the decedent's methadone prescriptions were dispensed in "excessive quantities, and at intervals beyond those normally prescribed."  The plaintiff relied on Barkin's opinion that the physician and the pharmacy had a joint duty "to ensure that controlled substance prescriptions are issued for a legitimate medical purpose" and that the pharmacies in this case failed to ensure methadone was dispensed to the decedent for a proper purpose and not in "quantities beyond those normally prescribed for back pain."  The plaintiff further argued that the pharmacies had a duty to report to Dr. Preston that "dispensing of [Dr. Preston's] prescriptions were occurring *** at lethal dosing."  The plaintiff cited Barkin's expert opinion that if they had done so, "a history of excessive dispensing at lethal dosage would have been identified, and appropriate professional activity would have been engaged."

¶ 12    Although the plaintiff cited no case law recognizing the duties he alleged, the plaintiff argued that the cases cited by Walgreen and Osco were not on point because they predated the legislation regarding the prescription drug monitoring program, and because they involved "duty to warn situations, not duty to prescribe in good faith."   The plaintiff also argued that the learned intermediary doctrine was inapplicable, and that the duties advocated by the plaintiff's position did not require a pharmacist to exercise "medical judgment" but simply "good faith dispensing."

¶ 13 Osco and Walgreen filed reply briefs on May 9, 2014, which argued that Illinois law did not support the duties urged by the plaintiff. Osco and Walgreen relied primarily on Illinois case law holding that "a pharmacist has no common law or statutory duty to refuse to fill a prescription simply because it is for a quantity beyond that normally prescribed or to warn the patient's physician of that fact." *Eldridge v. Eli Lilly & Co.*, 138 Ill. App. 3d 124, 130 (1985). Osco and Walgreen urged that Illinois courts had "declined to create a duty when a pharmacist does nothing more than fill prescriptions as ordered by the physician," and that Illinois law did not impose a duty upon a pharmacist to refuse to fill prescriptions for "excessive" quantities of drugs. Osco and Walgreen also argued that the express language of the Controlled Substances Act did *not* impose any duty for a pharmacist to access a patient's prescription history through the prescription monitoring program.

¶ 14 Osco and Walgreen additionally argued that the duties urged by the plaintiff were against public policy, as they would require a pharmacist to "second guess" a doctor's prescription, "make medical judgments," and "interject himself into the doctor-patient relationship." The pharmacies urged that such a result conflicted with the learned intermediary doctrine.

¶ 15 On June 12, 2014, the trial court granted both motions for summary judgment. The court did not issue a memorandum but its written order recites that "the Court found that no duty existed." That order also specified that the court found "no just reason to delay enforcement [or] appeal of summary judgment in favor of [Walgreen and Osco] *** pursuant to Illinois Supreme Court Rule 304(a)."

¶ 16 On July 10, 2014, the plaintiff filed a motion for reconsideration, claiming the trial court had committed a "misapplication of the law as to duty" and had improperly ignored the affidavit

of Dr. Barkin. The motion for reconsideration largely repeated the arguments contained in the plaintiff's opposition to the motions for summary judgment.

¶ 17 On August 26, 2014, the trial court denied the plaintiff's motion to reconsider. On September 25, 2014, the plaintiff filed a notice of appeal.

¶ 18                                                     ANALYSIS

¶ 19 We note that the trial court's order granting summary judgment in favor of Walgreen and Osco was not a final order, as the plaintiff's claims against Dr. Preston and Preston Health Partners, P.C. remained pending. However, the trial court made an express finding that there was no just reason to delay appeal, and the plaintiff's notice of appeal from that order was timely. Thus, we have appellate jurisdiction pursuant to Illinois Supreme Court Rule 304(a) (eff. Jan. 1, 2006).

¶ 20 As this appeal arises from the grant of a motion for summary judgment, "we conduct a *de novo* review of the evidence in the record" "to determine whether any genuine issue of material fact exists." *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 185-86 (2002). Summary judgment should be granted "only when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* at 186 (quoting 735 ILCS 5/2-1005(c) (West 2000)).

¶ 21 "In order to prevail in an action for negligence, the plaintiff must establish that the defendant owed a duty of care to the plaintiff. [Citation.] In the absence of a duty owed to the plaintiff, no recovery is possible as a matter of law, and summary judgment for the defendant is proper." *Hernandez v. Schering Corp.*, 2011 IL App (1st) 093306, ¶ 24.

¶ 22    In this appeal, we must decide whether the trial court properly granted summary judgment due to the absence of any duty by the defendant pharmacies to monitor the decedent's prescription history for excessive and abnormal prescriptions, or to communicate a corresponding warning to the decedent or prescribing physician.  The plaintiff's brief frames the issue as whether "the pharmacies had a duty to access and take action on the information available to them concerning [the decedent's] methadone prescriptions, including dosages, frequency and overlapping date-ranges."  Notably, the plaintiff's argument concedes that "[t]he Illinois authorities to date establish a rule that a pharmacist has no duty to warn the patient or to notify the doctor that addictive drugs may be dangerous in high doses."

¶ 23    As in his trial court briefing, the plaintiff on appeal fails to identify any Illinois case imposing a duty by a pharmacist to monitor a patient's prescription drug history for "excessive" or abnormal quantities or frequency of prescriptions, or to warn a physician or patient of such excessive prescription drug use.   Nevertheless, he contends that we should now impose such duties, particularly in light of a pharmacist's ability to access such patient history information pursuant to the provisions of the Illinois Controlled Substances Act.  For the reasons set forth below, we decline to depart from our precedent denying such duties, and we affirm the trial court's order granting summary judgment to Osco and Walgreen.

¶ 24    Our appellate court has consistently declined to impose upon a pharmacy, any duty to monitor patients, make medical decisions, or to warn a physician or a patient of "excessive" prescribed doses.   In 1985, the Fourth District of our court affirmed the dismissal of a wrongful death claim against a pharmacy that was allegedly "negligent in filling prescriptions for quantities of *** drugs beyond those normally prescribed and in failing to warn [the prescribing

physician] that the prescriptions were for an excessive quantity." *Eldridge v. Eli Lilly & Co.*, 138 Ill. App. 3d 124, 126 (1985).

¶ 25    The *Eldridge* court addressed the issue of "whether a pharmacist has a duty to warn a physician that drugs are being prescribed in an excessive amount." *Id.* In declining to find such a duty, the *Eldridge* court approvingly cited a federal district court case that had recently concluded that "Illinois law imposed no duty on a pharmacist to warn the customer or notify the physician that drugs are being prescribed in dangerous amounts, that the customer is being overmedicated or that various drugs in the prescribed quantities could have an adverse effect." *Id.* (citing *Jones v. Irvin*, 602 F. Supp. 399 (S.D. Ill. 1985)). The *Eldridge* court recited the reasoning of *Jones v. Irvin* that:

> " 'It is the duty of the prescribing physician to know the characteristics of the drug he is prescribing, to know how much of the drug he can give his patient, *** to warn the patient of any dangers associated with taking the drug, to monitor the patient's dependence on the drug, and to tell the patient when and how to take the drug. Further, it is the duty of the patient to notify the physician of the other drugs the patient is taking. Finally, it is the duty of the drug manufacturer to notify the physician of any adverse effects or other precautions ***. [Citation.] Placing these duties to warn on the pharmacist would only serve to compel the pharmacist to second guess every prescription a doctor orders in an attempt to escape liability.' " *Id.* (quoting *Irvin*, 602 F. Supp. at 402).

¶ 26　The *Eldridge* court found the "*Irvin* decision to be sound," explaining:　"The doctor acts as a learned intermediary on behalf of the ultimate consumer.　[Citation.]　The physician must evaluate the patient's needs, assess the risks and benefits of available drugs, prescribe one and supervise its use."　*Id.* at 127.

¶ 27　The *Eldridge* court specifically rejected the plaintiff's argument that because a pharmacist may have greater knowledge of the propensities of drugs, the pharmacy should have a "duty to act as a safety supervisor and determine whether the physician has properly prescribed the drugs."　*Id.*　Our appellate court explained:

> "The propriety of a prescription depends not only on the propensities of the drug but also on the patient's condition.　A prescription which is excessive for one patient may be entirely reasonable for the treatment of another.　To fulfill the duty which the plaintiff urges us to impose would require the pharmacist to learn the customer's condition and monitor his drug usage.　To accomplish this, the pharmacist would have to interject himself into the doctor-patient relationship and practice medicine without a license."　*Id.*

¶ 28　*Eldridge* further rejected the plaintiff's arguments that the directive under the Pharmacy Practice Act for a pharmacy to dispense medication in "good faith" (Ill. Rev. Stat. 1983, ch. 111, ¶ 4031), or the corresponding "good faith" provision under the Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, ¶ 1102(v)), served to "place a duty on the pharmacist to warn the physician when drugs are being prescribed in quantities beyond those normally prescribed."　*Eldridge*, 138 Ill. App. 3d at 127-28.　The court emphasized that the Controlled Substances Act

did not set forth any duty by a pharmacy "to warn the physician that a prescription is for an excessive quantity" and did not "prohibit a pharmacy from filling lawful orders for quantities beyond those normally prescribed." *Id.* at 128. *Eldridge* concluded that "a pharmacist has no common law or statutory duty to refuse to fill a prescription simply because it is for a quantity beyond that normally prescribed or to warn the patient's physician of that fact." *Id.* at 130.

¶ 29     The First District of our Appellate Court reached a similar result in *Fakhouri v. Taylor*, 248 Ill. App. 3d 328 (1993). As in this case, *Fakhouri* was a wrongful death negligence action arising from an overdose of a prescription drug in which the plaintiff sued a pharmacy for "filling prescriptions for quantities of [the drug] beyond those normally prescribed and in failing to warn either [the doctor] or [the decedent] that the prescriptions were for an excessive and unsafe quantity." *Id.* at 329-30. The *Fakhouri* plaintiff asked our court "to impose upon pharmacists a duty to warn their customers of prescribed dosages of medication in excess of the manufacturer's recommended limits." *Id.* at 330.

¶ 30     We declined to impose such a duty and affirmed the dismissal of the claims against the pharmacy. After discussing *Eldridge* and other precedent, we explained: "Determining which medication is to be utilized in any given case requires an individualized medical judgment, which *** only the patient's physician can provide. That physician *** presumably knows the patient's current condition, as well as the patient's complete medical history. To impose a duty to warn on the pharmacist would be to place the pharmacist in the middle of the doctor - patient relationship, *without* the physician's knowledge of the patient." (Emphasis in original.) *Id.* at 332-33.

¶ 31     Notably, in a decision relied upon by the plaintiff in this case, our supreme court has recognized a pharmacist's duty to warn under certain limited circumstances. *Happel v. Wal-Mart*

*Stores, Inc.*, 199 Ill. 2d 179 (2002). However, we find that *Happel* is distinguishable and that its reasoning weighs *against* the plaintiff's position in this case.

¶ 32    In *Happel*, our supreme court addressed "whether a pharmacy has a duty to warn about a known drug contraindication where the pharmacy is aware of a customer's drug allergies and knows that the medication prescribed by the customer's physician is contraindicated for a person with those allergies." *Id.* at 180-81. In that case, the plaintiff had suffered an allergic reaction after obtaining a prescription for Toradol, a pain reliever that was contraindicated for patients who, like the *Happel* plaintiff, were allergic to aspirin. *Id.* at 181. The evidence showed that the plaintiff had been a customer of the dispensing pharmacy (Wal-Mart) on prior occasions, she had previously informed Wal-Mart of her aspirin allergy, and that her allergy information was already in the pharmacy's computer system. *Id.* at 182. Deposition testimony established that a " ' drug interaction' " warning for the plaintiff's Toradol prescription should have appeared on the pharmacist's computer screen, and that Wal-Mart's policy required the pharmacist to contact the prescribing physician if such a warning appeared. *Id.* at 182-83. However, the pharmacist did not recall filling the plaintiff's Toradol prescription or calling the plaintiff's doctor. *Id.* at 183. Although the trial court granted summary judgment in Wal-Mart's favor, the appellate court reversed, finding that Wal-Mart owed a duty to warn either the prescribing physician or the plaintiff that she should not take Toradol. *Id.* at 184-85.

¶ 33    Our supreme court agreed that the pharmacy had a narrow duty under *Happel*'s facts. The court first explained: "In determining whether a duty exists, courts look to certain relevant factors. These include: (1) the reasonable foreseeability that the defendant's conduct may injure another, (2) the likelihood of an injury occurring, (3) the magnitude of the burden of guarding against such injury, and (4) the consequences of placing that burden on the defendant.

- 12 -

[Citations.]" *Id.* at 186-87. Our supreme court proceeded to find that these factors weighed in favor of the pharmacy's duty to warn of a contraindication *already known* to the pharmacy for a particular patient.

¶ 34    Our supreme court emphasized that under the facts of that case, "Wal-Mart was aware not only of [the plaintiff's] drug allergies, but also that the drug prescribed *** was contraindicated for persons such as [plaintiff] who are allergic to aspirin." *Id.* at 187. The court reasoned: "Given this superior knowledge on the part of Wal-Mart, and particularly given the nature of the knowledge, *i.e.*, that Toradol was *contra*indicated, it was reasonably foreseeable that a failure to convey this knowledge might result in injury to [the plaintiff]." (Emphasis in original.) *Id.*

¶ 35    The court further explained that the "burden on defendant of imposing this duty is minimal," as "[a]ll that is required is that the pharmacist telephone the physician and inform him or her of the contraindication," or "the pharmacist could provide the same information to the patient." *Id.* As the "burden of warning about a contraindication is extremely small" this factor also weighed in favor of recognizing a duty to warn. *Id.* Our supreme court further reasoned that by imposing such a duty, the "defendant is not being asked to learn the customer's condition, *nor is defendant being required to render a medical judgment or interject itself into the doctor-patient relationship.* Instead, Wal-Mart need only pass along to the customer or the physician the information it already possesses about the contraindication for this specific customer." (Emphasis added.) *Id.*

¶ 36    Our supreme court noted that Wal-Mart, relying on precedent including *Eldridge* and *Fakhouri*, had "contend[ed] that the learned intermediary doctrine precludes the imposition of a duty to warn here." *Id.* at 192-93. However, the *Happel* court concluded that its particular facts were "outside the purview of the learned intermediary doctrine." *Id.* at 193. The court explained

- 13 -

that "the rationale underlying the learned intermediary doctrine is that because the prescribing physician has knowledge of the drugs he is prescribing and, more importantly, knowledge of his patient's medical history, it is the physician who is in the best position to prescribe drugs and monitor their use." *Id.* The *Happel* court recognized that this rationale was the basis for the holdings of *Eldridge* and *Fakhouri* that "pharmacists should not have a duty to warn a patient or physician of the adverse side effects of prescription drugs." *Id.*

¶ 37 Nevertheless, our supreme court held that the reasoning in those decisions was not applicable under the facts of *Happel. Id.* at 194. The court explained:

> "Here, Wal-Mart was aware not only of [the plaintiff's] drug allergies, but also that Toradol was contraindicated for persons such as [the plaintiff] with allergies to aspirin. Imposing a duty to warn of this contraindication would not require the pharmacist to 'learn the customer's condition and monitor his drug usage.' [Citation.] On the contrary, Wal-Mart already had the knowledge it needed in order to give an effective warning, and this warning required Wal-mart only to notify [the prescribing physician] or [the patient] of the Toradol contraindication, not to monitor [the plaintiff's] drug usage. Further, imposing a duty to warn here would not have intruded Wal-Mart into the doctor-patient relationship, forcing it to 'practice medicine without a license.' [Citation.]" *Id.*

Our supreme court thus found that "[t]his is not a case in which the plaintiff is asking the pharmacist to exercise any modicum of medical judgment or to interject himself into the doctor - patient relationship. [Citation.]" (Internal quotation marks omitted.) *Id.* at 194-95.

¶ 38    Our supreme court in *Happel* further explained: "The situation here differs from that in *Fakhouri* and *Eldridge*, where imposing the duty that the plaintiff sought would have required the pharmacist to warn that drugs were being prescribed in excessive quantities. As the court in *Edlridge* aptly noted, '[a] prescription which is excessive for one patient may be entirely reasonable for the treatment of another.' [Citation.] Hence, imposing upon a pharmacist a duty to warn in such a situation might arguably require him to make a medical judgment." *Id.* at 195. In contrast, the *Happel* court reasoned that "[i]t requires no medical judgment simply to notify a physician or a patient of *** a contraindication." *Id.* Our supreme court in *Happel* thus recognized "a narrow duty to warn" where "a pharmacy has patient-specific information about drug allergies, and knows that the drug being prescribed is contraindicated for the individual patient." *Id.* at 197.

¶ 39    In this case, the plaintiff argues that, as *Happel* imposed a duty to warn based on the pharmacist's knowledge of the plaintiff's allergy information, a pharmacy's ability to access a patient's prescription history supports imposing a duty to monitor and warn of a patient's excessive prescription drug use. The plaintiff relies heavily on the provisions of the Illinois Controlled Substances Act (Act) to argue that such a duty would impose a minimal burden on pharmacies. See 720 ILCS 570/100, *et seq.* (West 2012). The Act specifies that it reflects the General Assembly's intent "to provide a system of control over the distribution and use of controlled substances which will more effectively: (1) limit access of such substances only to

those persons who *** have a lawful and legitimate reason to possess them; (2) deter the unlawful and destructive abuse of controlled substances." 720 ILCS 570/100 (West 2012).

¶ 40    In furtherance of those goals, the Act provides for the maintenance of a database of patient prescription information that is accessible to pharmacies. Specifically, section 316 of the Act establishes a "prescription monitoring program" for controlled substances (such as methadone), under which pharmacies must transmit to a "central repository" information regarding each prescription it dispenses, including the patient's name, date that the prescription was filled, and the quantity and days' supply of the substance dispensed. 720 ILCS 570/316(a) (West 2012). Under section 317, the "central repository" must create a searchable database containing such information. 720 ILCS 570/317 (West 2012).

¶ 41    Under the Act, pharmacists *may*, but are not required to, access such prescription history information. Specifically, section 318 of the Act provides for "a prescriber and dispenser inquiry system" for the central repository "to assist the health care community in its goal of effective clinical practice and to prevent patients from diverting or abusing medications." 720 ILCS 570/318(j) (West 2012). Through this system, dispensers of a controlled substance "may *** make an inquiry on a patient or customer solely for a medical purpose ***." 720 ILCS 570/318(j)(2) (West 2012). However, section 318 is also explicit that "[n]othing in this Act or Illinois law shall be construed to require a prescriber or dispenser to make use of this inquiry system." 720 ILCS 570/318 (j)(7) (West 2012).

¶ 42    The plaintiff argues that, as a pharmacist may access a patient's prescription history pursuant to the Act, a pharmacy may "have more information than the doctor especially if the patient is addicted to the drug and is resorting to deception to get more of it." The plaintiff suggests that in the hypothetical situation of an addict who has seen numerous doctors to obtain

prescription drugs in amounts "outside any possible normal range," the pharmacy would be in the best position to discover the excessive prescriptions, as each individual doctor would "know[] only what prescription she herself has written for the patient."

¶ 43 Under the facts of this case, the plaintiff contends that Walgreen and Osco "were in a much better position than the doctor" because the pharmacies had "easy access" to the decedent's prescription history, either through their own internal databases or access to the prescription monitoring system pursuant to the Act. The plaintiff urges that "[w]here a pharmacy has instant access to a database of prescription information, which information, if properly communicated and acted upon, can save lives," the law of Illinois should "impose a duty on the pharmacy to click the mouse and make a telephone call."

¶ 44 We find the plaintiff's arguments unpersuasive. The plaintiff's contention that the Act supports imposition of a pharmacy's duty to monitor a patient's prescription history is actually undermined by the language of the statute. More fundamentally, the duties advocated by the plaintiff directly conflict with our case law, including our supreme court's decision in *Happel*, regarding the scope of a pharmacist's duties and the learned intermediary doctrine.

¶ 45 First, we reject the plaintiff's suggestion that a duty to monitor may be inferred by the provisions of the Act. The Act simply does not require any pharmacy to make use of the prescription monitoring program, let alone impose a duty to actively monitor a patient's history to detect abnormally large or frequent prescriptions. As Walgreen's brief notes, section 316 only requires pharmacists to transmit prescription information to the central repository, but does not require pharmacies to access the program's database in order to monitor its customers' prescription usage. Likewise, although section 318 *permits* a dispensing pharmacy to make an

inquiry of such patient data for a medical purpose, it is explicit that "[n]othing in this Act ***

shall be construed to require a prescriber or dispenser to make use of this inquiry system." *Id.*

¶ 46    Notably, other language within the Act also weighs against the duties urged by the

plaintiff.   Specifically, section 314.5's provisions regarding "pharmacy shopping" make it

unlawful to "fraudulently seek to obtain any controlled substance from a pharmacy while being

supplied with any controlled substance by another pharmacy, without disclosing the fact of the

existing controlled substance to the [second] pharmacy."  720 ILCS 570/314.5(b) (West 2012).

However, section 314.5(e) provides that "*Nothing in this Section shall be construed to create a

requirement that any prescriber, dispenser, or pharmacist request any patient medication

disclosure, report any patient activity, or prescribe or refuse to prescribe or dispense any

medications*."  (Emphasis added.)  720 ILCS 570/314.5(e) (West 2012).

¶ 47    The plaintiff's argument on appeal acknowledges these provisions of the Act but argues

"[t]hese exclusions or immunities seem to be directly at odds with both the legislative intent and

the goal of the respective subsections."  Thus, the plaintiff essentially concedes that the duties he

urges are undermined by the Act's provisions.  Nonetheless, the plaintiff urges that "in light of

the seriousness of the harm and the minimal burden involved, the Illinois legislature could not

have intended to allow a pharmacy *** to subscribe to and have access to the vast information in

the database but not do so much as literally lift a finger to click a mouse to access it."

¶ 48    The plaintiff essentially requests that we infer new pharmacist duties from the Act that

are not only absent from the statute, but are contradicted by its terms.  We decline to do so.  Had

the General Assembly wished to impose a requirement for pharmacists to monitor patients'

prescription histories for "excessive" drug use, it could have specified such an obligation.

Instead, the legislature inserted provisions stating that the Act did *not* impose such duties.

¶ 49    Moreover, regardless of the Act, imposing the duties urged by the plaintiff would run contrary to the reasoning of Illinois precedent, including our court's decisions in *Eldridge* and *Fakhouri* and our supreme court's reasoning in *Happel*.   In this case, the plaintiff asserts that pharmacies had a duty to monitor the decedent's methadone prescription history, make a judgment as to whether the amounts prescribed were "excessive" and, upon such determination, notify either Dr. Preston or the decedent.   However, our precedent has repeatedly cautioned *against* requiring a pharmacy to monitor a patient, make medical judgments, or otherwise interject itself in the physician-patient relationship.

¶ 50    Imposing a duty on a pharmacist to track a patient's prescription history for "excessive" amounts of methadone or any other controlled substance would undoubtedly require the pharmacist to "learn the customer's condition and monitor his drug usage," which is the function of a physician, not a pharmacist. *Eldridge*, 138 Ill. App. 3d at 127.  Moreover, to the extent the plaintiff would require the pharmacy to warn of "abnormal" or "excessive" prescriptions, such a duty would, by necessity, require the pharmacy to make a medical judgment about the reasonableness of the patient's prescriptions.  This is because, unlike the objective facts of a drug contraindication or a patient allergy at issue in *Happel*, it may not be clear to a non-physician whether a dose for a particular patient is normal or "excessive."   As our courts have recognized, " '[a] prescription which is excessive for one patient may be entirely reasonable for the treatment of another.' " *Happel*, 199 Ill. 2d at 195 (quoting *Eldridge,* 138 Ill. App. 3d at 127).

¶ 51    Although the plaintiff attempts to rely on *Happel* because it imposed a pharmacist's duty to warn in certain particular circumstances, *Happel*'s reasoning weighs *against* imposing the duties urged by the plaintiff in this case.  Significantly, the *Happel* court explained that it recognized the narrow duty in that case, in part, because it did *not* require the pharmacy to

"monitor" a patient or otherwise exercise medical judgment. Under the facts of that case, the pharmacy "already had the knowledge it needed in order to give an effective warning [of a contraindication], and this warning required Wal-Mart only to notify [the doctor] or [patient] of the Toradol contraindication, *not to monitor Heidi's drug usage.*" (Emphasis added.) *Id*. at 194. In contrast, the plaintiff in this case would require the pharmacy to "monitor" each patient's use of a prescribed controlled substance. Further, imposing a duty upon a pharmacy to alert a prescribing physician of a patient's "excessive" prescriptions would necessarily require the pharmacy to make a medical judgment.

¶ 52   Thus, regardless of whether a pharmacist may access the prescription history of a particular patient, that fact is not sufficient to impose duties to: (1) monitor the patient's prescription history, (2) determine whether prescriptions were "excessive"; or (3) warn the prescribing physician or the patient of that determination. Such duties would clearly require the pharmacy to interject itself into the doctor-patient relationship, in violation of the principles stated by our court in *Eldridge* and *Fakhouri* and reiterated by our supreme court in *Happel.* We find no reason to depart from the reasoning of that precedent, and thus we decline to impose the duties urged by the plaintiff.

¶ 53   Finally, we note that the plaintiff's argument briefly refers to the concept of "assumed duty or voluntary undertaking." The lone case cited by the plaintiff for that principle is *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26 (1992). In that case, the plaintiff argued that by labeling a prescription drug container with a "may cause drowsiness" label, a pharmacy had undertaken a duty to warn the patient of other possible side effects. *Id.* at 30-31. The majority of our supreme court rejected that argument, affirming summary judgment in favor of the pharmacist. *Id.* at 34. Justice Bilandic dissented, expressing his view that the pharmacy had undertaken to warn of the

drug's side effects and that material questions of fact remained as to "whether the defendants negligently performed their undertaking to warn." *Id.* at 39 (Bilandic, J., dissenting, joined by Freeman, J.).

¶ 54     The plaintiff's brief discusses Justice Bilandic's dissent but fails to articulate any specific argument as to why the pharmacies in this case assumed any duty to monitor or warn of the decedent's level of methadone use.  In any event, the majority holding in *Frye*—which concluded that "consumers should principally look to their prescribing physician to convey the appropriate warnings regarding drugs, and it is the prescribing physician's duty to convey these warnings to patients"—clearly weighs against the plaintiff's attempt to impose such a duty upon the pharmacy defendants in this case. *Id.* at 34 (majority opinion).

¶ 55     We conclude that Walgreen and Osco had no duty to monitor the decedent's methadone prescription history, to attempt to determine whether such use was "excessive," or to communicate a corresponding warning to the prescribing physician or the decedent. Accordingly, we agree with the trial court that Osco and Walgreen were entitled to summary judgment.

¶ 56     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 57     Affirmed.